Good morning, Your Honors. May it please the Court, I'm Marla Zink from the Washington Appellate Project, and I'm here on behalf of the defendant-appellant Ronald Brekke, and I'm going to try and reserve five minutes for rebuttal. Your Honors, several errors arose during Mr. Brekke's criminal trial, but the most significant of these was the denial of Mr. Brekke's Sixth Amendment rights. First, the Court denied his constitutional right to represent himself by failing to follow his request to proceed pro se with a Feretta hearing to determine whether he waived the right to an attorney. Did he ever actually unequivocally state, I want to represent myself? Yes, Your Honor, we believe that he did, and he did so a week after the magistrate, Magistrate Tyler's hearing at ER 469 in a document entitled something like attorney status and representation. He states, Mr. Brekke states that he intends to exercise his right to defend himself and to speak for himself. And not only did he raise that unequivocal request, but he also consistently complained about appointed counsel's representation. He rejected counsel's authority to act on his behalf. He refused to communicate with his attorney, and he acted pro se. And in addition- Excuse me. When I read through the various colloquies with the District Court, he had a very difficult time saying, I want to represent myself. He said, I can't represent myself because I am myself, and I won't give up my right to have effective assistance of counsel, though I want to speak for myself. And so he never came out and said, I understand I will not have any attorney representing me or in the wings, and I will just represent myself. I didn't see that anywhere in the transcripts. Well, that's right, Your Honor. And the reason we don't have that is because the District Court never conducted a Feretta colloquy after his unequivocal request to represent himself. And we can only determine whether he waived the corollary right to the assistance of counsel by going through a Feretta colloquy. And that was the District Court's burden to do. And that did not happen in Judge Tyler's hearing. In fact, she said she wasn't doing that there and that the defendant could request to do that in the future. And that's what he did at ER-469 and throughout his consistent stance of representing himself and denying the representation of counsel. And as the Court said in Hernandez, it's also relevant to the unequivocality of a request to proceed pro se what defense counsel's position on that is. And here we know from ER-421 that defense counsel believed that Mr. Brekke had unequivocally invoked his right to proceed pro se. So what the Court's obligation at that time was to conduct a Feretta colloquy. And it was only after or it would have only been after a Feretta colloquy that we could judge whether he had waived the right to counsel. And we can't determine that here because we have no Feretta colloquy after this invocation of the right to proceed pro se. And so I'd urge the Court to look at Farias, which is clear on the issue of how important this Feretta colloquy is. In that case, the defendant stated, if you give me the honor, then I'd like to go pro se. I'm sorry, if you give me the opportunity, then I would like to go pro se. And the district court, instead of conducting a Feretta colloquy, essentially attempted to dissuade the defendant from proceeding pro se. And this Court reversed on Sixth Amendment grounds, saying that Mr. Farias was entitled to proceed pro se. And because the district court did not complete the Feretta hearing, the Court never determined whether Farias' request was made knowingly and intelligently. Adams v. Carroll is also instructive. And in that case, there was sort of a ping-pong of motions going on here. First, the defendant moved for new counsel. That request was denied. He then moved to proceed pro se, and that request was granted. But after the defendant lost several motions, he requested counsel again, and it was granted. But the same attorney was appointed, and he was upset with that appointment of counsel. And so the defendant asked again to go pro se if the Court would not give him different counsel. And after a colloquy, the defendant acknowledged that he did not think he could represent himself, but preferred that to his assigned counsel. Well, it seemed to me here that he has a pattern that you pick up from the transcript, which is that there's repeated inquiries. I don't see any unambiguous, you know, waiver of his right to counsel. And he wants he doesn't want to be submitted to a system that he views as corrupt. And yet, as he says, he doesn't want to give up the ineffective assistance of counsel. So it's hard to divine a waiver from those kind of statements, which seem to kind of keep recurring. What is your assessment of what I think is a history and a pattern? What we needed here was a district court conducting a colloquy on whether he would waive the right to counsel. There's two different aspects to the right to proceed pro se. The first is invoking that right and requesting it. And Mr. Brecke did that here. But what never happened was a follow-up, a colloquy with the court to explain to him the advantages and disadvantages of going pro se, the penalties that would be involved in the charges that he faced. And only after that colloquy could it be determined whether there was an effective waiver of the right to assistance of counsel. I don't think the court can answer that question on this record. And the trial court's attempt to answer that question was an error of law because it had not conducted a colloquy on that. Just for the record, I do want to note that, as you may know, the court received a communication in this appeal from Mr. Brecke saying that his attorney is not authorized to make arguments on his behalf. But we've confirmed through the clerk that you would be appearing today and making arguments. But I did want to note for the record that we had received Mr. Brecke's communication. And, obviously, the inquiry is different at a trial court. And then it would be on appeal. There is no corollary right on appeal. And we're judging this at the time that it happened in the trial court. I'm just making the point because I don't want Mr. Brecke to think we didn't receive his letter. Absolutely appreciate it. And I know that that's on the docket as well. And this also begs the question of the second part of the court's denial of the Sixth Amendment right, and that is his right to conflict-free counsel. There was clearly an irreconcilable conflict that, at the very least, demanded an inquiry into the nature of the conflict, if not simply a substitution of counsel. Mr. Brecke would not communicate with his counsel whatsoever. He considered his counsel incompetent and ineffective, and he repeatedly told that to both the court and to counsel in filings and before the court in hearings. And counsel moved to withdraw on the basis that there was no viable attorney-client relationship. Counsel said that he did not feel comfortable filing pleadings on behalf of a client who insisted that such action is contrary to his interests. Appointed counsel also told the court that the client was not communicating with him, and the client would provide him with no input. This is an irreconcilable conflict of the nature discussed in Moore, in Nguyen, in Brown v. Craven. Isn't this Mr. Brecke's own doing? I mean, as I understand the record, he was insistent that the lawyer establish that he has a proven track record of success and he wants a certification that he's an expert criminal tax attorney and other requests that no counsel is going to be able to give him. Well, I think we had some indication that that might have been part of the nature of the conflict, but we also had other evidence that the conflict was much deeper there, so that attorney and client were not communicating at all at the point of the second motion to withdraw. There had been counsel had requested a competency determination, and in his counsel's filing at ER 295, he indicates that that had driven a further wedge into their relationship that was different than anything that had been present in the first substitution of counsel that is likely to be something that would not have repeated, and that was something individual to Mr. Brecke and to Mr. Lean, the appointed counsel at that time. The court would have had to conduct an inquiry to really determine whether this was something that was going to continue or was something that Mr. Brecke was creating, but the filings from counsel indicate that that's not the case. They indicate that there were conflicts between them. Looking at Mr. Brecke's filing, there's a real distaste for counsel, calling him duplicitous, saying there's blatant abuses of the legal proceedings, and this is a real absence of an attorney-client relationship that's necessary for the conflict-free right to effective assistance of counsel under the Sixth Amendment. This is different than Mendez-Sanchez. In that case, the court conducted extensive colloquies, and the real disagreement between counsel and the client was merely strategy, and that's not a sufficient basis for substituting counsel. Ironically, that seems to be the basis for the first motion to substitute counsel here, but that's different than what was going on at the time. I'm going back now to try to pick up on your earlier reference at ER 469, and that's where he's saying that he hasn't accepted, quote, representation by attorney Robert M. Lean or any other attorney. So in your view, does that relate to his conflict in his representation or his demand for self-representation? Because he never says, I want to represent myself. Does he? He does, and I believe that's at ER 469, and I can double-check that for rebuttal if you'd like, or I can do it now. Okay, you can do it maybe during the break. I'll double-check the paragraph reference, but he says he intends to exercise the right to defend oneself and to speak for oneself, and I think that that joins along with his rejection of attorney Lean. It seems to indicate an intent to represent himself, but again, because we don't have a colloquy either on a Feretta hearing or an inquiry into the nature of the extent of the conflict and the right to conflict-free counsel, I don't think it's clear that we can tell which one he would have done had he been given an effective colloquy like the court did in Adams v. Carroll or that this court found did not happen in Farias. So when the court follows up on that question, he consistently says, I do not relinquish my right to effective representation. He was very consistent on that. So it seems that was why the court didn't think there wasn't any biblical waiver. Well, I think there's a distinction there. Magistrate Tyler held a hearing that was supposed to be on the substitution of counsel. They really discussed a right to represent himself, but it was clear from Judge Tyler's perspective that that was not a Feretta colloquy. Mr. Brekke was not there in person. Mr. Brekke was told at the end of that hearing that if he wanted to proceed on his right to proceed pro se, then he needed to let the court know that a Feretta colloquy would be conducted. We have filings like at ER 469 and yet no Feretta colloquy. So I don't think we ever have a discussion with Mr. Brekke subsequent to that with Magistrate Tyler where we can evaluate the effectiveness of his waiver. That was something the district court had to do under Feretta. I'd like to reserve the remainder of my time for rebuttal, Your Honors. Thank you. Good morning. May it please the court. My name is Tom Woods. I represent the United States in this matter. Ronald Brekke consistently told the court two things. First, he was not willing to waive his right to counsel. And second, he wanted whatever counsel would be representing him, whether that was his first counsel, his second, or a third, to make frivolous arguments to the court. That first point is fatal to his Feretta claim. That second point is fatal to his claim that he should have received a third counsel. What do you do with his statement that it's a constitutionally protected right to defend oneself and a fiend intends to exercise that right, which he says pursuant to Section 2072B? Well, if you looked at the page before, he also talks about at 468, Paragraph 5, he talks about at the September 8, 2011 hearing, he said he was open to, and that's only about a week or two before this filing, he's open to accepting competent and effective assistance as counsel as guaranteed by the Sixth Amendment, and the affiant him did not then, nor does not now, waive that right. So what he's saying is I don't waive my right to effective assistance of counsel, but I intend to exercise my right to represent myself. So you've got two dueling principles here, and isn't that precisely when you would have a Feretta hearing to figure out, are you asking to represent yourself, yes or no, and if so, then proceed with the Feretta colloquy? No, for two reasons. First, what triggers the district court, and again, whether it's the district court or the magistrate judge who holds the hearing is not something that matters, but what triggers the duty to hold the hearing is an unambiguous request to represent oneself. That is not what is here in the record, and again, as your Honor pointed out, prior to this filing, there is a long history at this point. There's been two hearings in which this topic has been discussed. That second hearing was not a Feretta hearing, but nonetheless, these issues were discussed, and after this filing, it's also discussed. Mr. Lean, his attorney, when he moves to withdraw on September 27, 2011, after this filing, he says Mr. Brecke unequivocally wants to fire his court-appointed attorney, okay, represent himself in this matter, okay, but will not waive his right to representation. That is what makes that request equivocal, and there again is a long history here. You know, at that first Feretta hearing, he says three different times, and I appreciate he's said a number of things, but he does say this three separate times. First, I wish to reserve the right to have assistance of counsel. Yes. Second, I do not choose to represent myself. Third, he says it again, I do not wish to represent myself. After that hearing, August 5, 2011, he submits one of his many filings to the court where he says he would be open to accepting competent court-appointed assistance of counsel on the condition that he or she signs an affidavit that was attached to his filing. At the hearing before Judge Tyler in which the issue of Mr. Lean's representation was discussed, he says, I'm open to having assistance of counsel. I'm open to defending myself. Again, an ambiguous statement. He says later he conditionally accepts the offer for Mr. Lean to stay on the case. Do you think he was trying to manipulate the court? I think it is what the court has said is general unreasonableness and manufactured dissent. I think this is somebody who was being purposely difficult, and as the court saw during that first Feretta hearing, it coincided with the initial appearance on the superseding indictment. Wind wave formal reading the indictment. We had to read the entire indictment into the record. He wouldn't initially sit at counsel table. He was obstructionist when the court asked him questions about here are the penalties, and the court would read the maximum penalties, and he said, I didn't understand, even though the court had just outlined them for him as well as the prosecutor. This was manufactured dissent. I mean, what comes through and through in Mr. Brekke's filings to the court is he has a different belief system. He doesn't believe the United States is legitimate. He didn't believe the court was legitimate. He didn't recognize the authority of the court. He didn't recognize the authority of his counsel. And because of that, this was a problem that was Mr. Brekke's own creation. And what's also noteworthy is we had a trial in this case. We had a pretrial hearing in terms of the morning of the trial. At no point, at no point after all this that we're discussing does either Mr. Lien or Mr. Brekke himself say, I am willing to waive my right to representation. I want to represent myself. That doesn't appear in the record. What appears in the record is this rash of ambiguous statements that does not trigger the right to a forenic hearing. And in terms of whether he should have received a third counsel in this case, as Judge Kuhnauer found, the same problems would have existed whether there was a third, fourth, or fifth counsel. Indeed, in that filing that you're on a reference in the appellate context, he asks his appellate counsel to do some of the very same frivolous things he asked his trial counsel to do, submit her bar certificate to the court, read a statement that is nonsense and frivolous. Again, the problems with Mr. Lien, the problems with his first attorney, were not particular to case strategy or the type of conflicts that the court might think about appointing a third counsel. They were this general unreasonableness and manufactured dissent. And so for that reason, the court did not err in not appointing a third counsel. Could you also address the supervised relief conditions? I was concerned about the ban on alcohol consumption when there was no evidence that Brekke had an alcohol abuse problem or that it related to his offense. Your Honor, so that review will be on plain error, and the court should not find plain error because, one, this is somebody who showed erratic behavior throughout these proceedings from the moment he was arrested and, frankly, through the time of this appeal. Second, he largely, and I say largely, did not cooperate with the probation office. He did initially in the pretrial context when he was initially arrested. He denied any alcohol or drug abuse problem, but as the court will see in the pre-sentence report, his history was almost entirely unverified. And in that context, particularly on plain error review, it's appropriate. It's appropriate relying on the Carter decision for the Ninth Circuit, where the court noted the erratic behavior of the defendant in that case. Admittedly, the defendant in that case had tried to overdose on migraine medication, but there wasn't an allegation that the person had some longstanding abuse problem with that medication. It was just that's how they attempted to take their own life. And so for all those reasons, and again, there's not a substantial right or fairness to the proceeding involved. If and when Mr. Brekke is released and it's determined that, in fact, he doesn't have a problem, he can come back to the court. The probation officer will come back to the court. It can be litigated again in that context. He can move to modify the conditions of the supervision, but that can be addressed after his release. But given his erratic behavior throughout the proceeding and his largely failure to cooperate with the probation department, it is not plain error. What about the related standard condition, which is not to frequent places where controlled substances are peddled? Is it your view that that can be imposed in any case, regardless of the connection with the offense? Well, it's a standard condition, and I think if the court makes the determination that that type of influence would be one that would tend to lead to recidivism. So in other words, Mr. Brekke is not the type of person who should be frequenting with other criminals. This was a scheme that involved some 1,000 individuals who filed fraudulent returns. Isn't that a different condition? Yeah, he's filing. It's a standard condition, but he's got a tax problem, and his condition of probation is don't frequent places where there's drug dealers. He has a tax problem, but I also say he has a recruitment co-conspirator problem. This is somebody who masterminded a scheme where he recruited approximately 1,000 individuals to file fraudulent returns, and the vast majority of those people, and I would actually submit all of them, knew perfectly well that what they were doing was fraudulent and illegal. Being in a setting where he's going to be in contact with people who are otherwise breaking the law is not something that's going to be beneficial in terms of Mr. Brekke being rehabilitated. Being around other people who are susceptible to breaking the law is the very conduct that led in this case. So in terms of him being on the path to rehabilitation, being out of a climate where there's other criminal activity occurring is only beneficial. And again, we are talking about a plain error standard of review as well. It was not objected to. Isn't that a different condition, that don't associate with felons as opposed to don't associate with drug dealers? Well, I think they're both served the same goal in this case in terms of having somebody not just with felons but also somebody who is committing other criminal activity. You think he's going to get some of those drug dealers to file false tax returns? I have no doubt that if we looked at the 1,000 people who filed returns in this place, we would see all sorts of different individuals who participated in this scheme. And being around other people who are breaking the law is not something that's going to be beneficial to Mr. Brekke if indeed he's going to be rehabilitated. Getting back to Judge Kuda's question, though, I thought for these types of conditions, you have to have some evidentiary factual basis to support applying them. And I'd rely on Carter. I mean, in Carter, what the court looked at was the fact that we had a very erratic defendant. Again, I don't want to overstate the case. In that case, the defendant had overdosed on migraine medication. But again, there was not a history of evidence. There was a history of abuse of that medication. We also have Etz, which says the mere fact that he doesn't provide a history can't be a basis for imposing that condition. So in Carter, it seemed like there was one data point, his use of the medication, so his abuse of the medication, at least for suicide. And here there was nothing. I'm not sure the behavior was erratic. He was just being a stripper, right? I would say, too, I think that's the error was preserved. And second, I would say obstreperous is one way to describe the conduct. I would also say it was erratic. Again, it did lead to a competency evaluation in this case in light of the bizarre filings that were made. So for that reason, we do think that the condition is supported. And again, in terms of the substantial rights or the fairness of the proceedings, if indeed post-release it becomes clear he's not in need of that treatment, it becomes clear that he can tolerate some alcohol consumption, he can always come back and petition to have that condition modified. It can be litigated in that context. But at this stage, there's no plain error. Unless the Court has any further questions. Thank you. To start off with, it seems the Court found it, but to be clear for the record, I was pointing to ER 469 of paragraph 12 regarding the invocation of the request to proceed pro se. And again, I urge the Court to look at Adams v. Carroll for the proposition that it's not problematic if the defendant's request to proceed pro se is intertwined with discussion of who his current appointed counsel is. As long as the defendant understands whether he will have a right to substitute counsel where there is a clear conflict, and if not, then can make the informed decision to proceed pro se after the District Court conducts a colloquy informing him of the dangers of doing so, as well as the severity of the charges, etc. Then there is no problem with him. Don't we err on the side of assuming that the defendant is requesting counsel? So we say even in Adams v. Carroll that if a defendant equivocates, he's presumed to have requested the assistance of counsel. And we're also very clear that absent an unequivocal request, then the need to have a verreta hearing is not triggered. I just didn't see an unequivocal request that would meet the standard we've set in our cases. And is ER 469 paragraph 12 the clearest case in your estimation? Yes, that is the clearest case that comes after Magistrate Tyler's statement to Mr. Brekke that he could tell the court if he wants to hold a verreta hearing. But then the page before that, he says the following, a fiend is open to accepting competent and effective assistance of counsel as guaranteed by the Sixth Amendment. And a fiend did not then nor does now waive that right. So getting back to Judge Okuda's question about unequivocal, it seems that even if you juxtapose those two statements, it would be hard to say they made an unequivocal request, wouldn't it? Well, I think paragraph 12 is an unequivocal request, and we can't judge his willingness to waive the right to the assistance of counsel without having held a colloquy where he is judged to understand that right and what it means. And again, even if you can, if the court finds that you can, we have here clearly an irreconcilable conflict between counsel and client. And again, the district court failed to hold an inquiry to examine into that or to appoint substitute counsel. And what we have here is exactly what verreta says we can't do. Verreta says that counsel shall be an aid to a willing defendant, not an organ of the state, interposed between an unwilling defendant and his right to defend himself personally. This is about free choice. It's about respect for the individual. And Mr. Brecke did not have an opportunity to exercise that right or to proceed to trial with effective assistance of counsel with whom he did not have a conflict. I find it offensive that the government has used the fact that Mr. Brecke asked that the indictment be read to him as a means of showing that he is obstructing here. He has that right to have the indictment read to him, and that shouldn't be used against him. I agree with the court's comments on the provisions of the sentencing conditions. Betz absolutely says that we need an individualized finding. The U.S. sentencing guidelines say the same thing. That was not had here. Betz also says that failure to comply with pre-sentencing procedures does not count against you in terms of your right to drink alcohol in moderation. So for all the reasons discussed here and in the briefing, I ask that the court reverse and in the alternative, vacate the sentencing conditions. Thank you, Your Honors. Thank you. I'd like to thank both of you for your argument this morning. United States v. Brecke is submitted. We'll next hear argument in Morgan v. Estrella.
judges: Carney, McKeown, Ikuta